UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARK RICHMOND, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-649-DRL-MGG |
| ANNE M. WALKER, | |
| Defendant. | |

OPINION AND ORDER

Mark Richmond, a prisoner proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Richmond is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Richmond is incarcerated at Indiana State Prison (ISP) and alleges that he is a "New Testament believer in the Church of our Lord Jesus Christ." He claims that

Chaplain Anne Walker, who is in charge of religious programming at ISP, has violated his right to exercise his religion.

According to the complaint (which spans 77 pages with attachments), his first issue with Chaplain Walker arose over a program called "Thanksgiving in a Box," which appears to be a charity event for needy people in the Michigan City community with which inmates assisted. He claims the program was a success in 2021, and in 2022 he asked Chaplain Walker about holding the event again. She encouraged him to speak with the Warden about it. However, he claims she later determined he could not be an organizer of the event because he had not selected "General Christian" as his religious preference, which was the group that would be running the program. He claims Chaplain Walker had in the past "disparaged" his religious beliefs because he "prescribe[s] to progressive theology," and she allegedly told him she thinks progressive theology is "unrealistic in a prison environment." (ECF 1 at 7.)

He later formally requested and was approved to be part of the "General Christian" community at ISP. "General Christian" is an umbrella term that refers to a variety of different Christian denominations. He claims that General Christian services are run by a group of six inmate-facilitators. In early January 2023, Mr. Richmond requested to preach at one of the General Christian services. Chaplain Walker requested that he provide an outline of his sermon. He refused, because in his view she was trying to "govern, sensor, monitor, and control my religious beliefs." As a result of not submitting the outline, he was not permitted to speak at the service. He filed written complaints, and Chaplain Walker told him in response that it was the facilitators who

2

had requested an outline of the sermon because Mr. Richmond had a "reputation for bad mouthing the community and a history of bringing division when you preach."[1] (ECF 1-1 at 9.) She further stated, "Unfortunately your actions and attitude have disqualified you from the privilege of preaching in the General Christian services." (*Id.*)

A few days later, Mr. Richmond told Chaplain Walker that he wanted to withdraw his selection of General Christian as his religious preference. She allegedly told him, "If you change your religious preference you will be removed from any count letters that do not match your new religious preference."[2] He claims she does not enforce this rule with respect to inmates from other religious backgrounds, such as Wicca, Hebrew Israelite, and Satanist. It is unclear from his allegations whether he actually changed his religious preference, but he claims that at some later point Chaplain Walker put him on a count letter for a Hebrew Israelite service that he did not wish to attend.

On February 1, 2023, Mr. Richmond was listed on a count letter to attend a Christian prayer service called "Prayer and Share." However, he did not attend. It can be discerned from his complaint that he also missed the prayer service on February 8, 2023. Chaplain Walker informed him in writing that he would be suspended from the count letter for the prayer service for 30 days, but stated that if he was at work or had some other excuse for "being out of place," he should let her know. Mr. Richmond was working

---

[1] He also asked her to give him the written "Articles of Faith" for the General Christian community, but she told him that no such document existed.

[2] It can be discerned from his allegations that an inmate must be listed on a "count letter" in order to attend religious services. The letter effectively gives the inmate permission to travel to the location of the service and advises staff where he is supposed to be when inmates are counted.

3

at his job in the prison law library on the dates of the prayer service and had his supervisor contact Chaplain Walker. His supervisor confirmed to her by email that he had been at work on the dates of the prayer service and further stated that he "works everyday of the week." (*Id.* at 36.) Chaplain Walker responded that Mr. Richmond would need to submit an "excused absence" request for any future weeks that he would not be at the prayer service. (*Id.*) She further stated, "I don't understand why he requested to be on a count letter that conflicts with his job" and noted that he had attended the prayer services "VERY infrequently." (*Id.*) An attachment to the complaint reflects that there are a limited number of spots available in the Prayer and Share meetings, and that a waiting list is maintained for this program. (ECF 1-1 at 45.) On February 15, 2023, Chaplain Walker removed Mr. Richmond from the count letter for the prayer service.

Based on these events, he sues Chaplain Walker for compensatory and punitive damages. He also seeks various forms of injunctive relief, including a suspension of the General Christian facilitator program and an order requiring Chaplain Walker to develop a training program to be attended by the facilitators.

"The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (quotations and citations omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (citation and quotations omitted). "De minimis burdens on the free exercise of religion are not of constitutional dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999).

In providing opportunities for inmates to practice their religion "the efforts of prison administrators, when assessed in their totality, must be evenhanded." *Maddox v. Love*, 655 F.3d 709, 718–19 (7th Cir. 2011) (citation omitted). Prisons cannot discriminate against a particular religion, but "[o]f course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another." *Id.* (citation omitted). Therefore, "[a] plaintiff doesn't state a cause of action under the First Amendment merely because a prison allocates a disproportionately smaller amount of its religious budget to certain sects or provides clergy for one religion and not another." *Id.*

A prison may impose restrictions on the exercise of religion that are reasonably related to legitimate penological objectives, which includes safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987). Additionally, "[a] prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than . . . a prisoner's desire to make a pest of himself and cause trouble for his captors." *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011); *see also Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988) (observing that "an inmate may adopt a religion merely to harass the prison staff with demands to accommodate his new faith").

The Religious Land Use and Institutionalized Persons Act (RLUIPA) offers broader protections than the First Amendment by prohibiting substantial burdens on "any exercise of religion [by an inmate], whether or not compelled by, or central to, a system of religious belief." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *see also* 42 U.S.C. § 2000cc-5(7)(A). RLUIPA only provides for injunctive relief against state officials,

not monetary damages. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011). As with the First Amendment, "a prisoner's request . . . must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015). To state a claim under RLUIPA, an inmate must plausibly allege that an aspect of his religious practice has been substantially burdened. *Id.* At a later stage, the burden will shift to the defendants to show that the challenged conduct is the least restrictive means of pursuing a compelling governmental interest. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005); *Koger v. Bryan*, 523 F.3d 789, 797 (7th Cir. 2008).

The complaint reflects that Mr. Richmond requested and was permitted to participate in General Christian services, which accords with his religious beliefs. He wanted to be able to preach at one of the services, and the facilitators reasonably requested more information about what he intended to say. In the prison setting, one can imagine the myriad ways in which giving an inmate a platform to address a group of other inmates poses a potential risk to the safety and security of the facility. *See Turner*, 482 U.S. at 89–91. Merely asking him for an outline of his sermon cannot be said to have substantially burdened his religious practice. Nor can putting him on a count letter for a service he did not wish to go, and apparently did not attend, be thought of as more than a de minimis burden. Although he claims inmates from other religious groups were treated differently with respect to count letters, he does not provide details from which the court could plausibly infer a lack of even-handed treatment. The mere fact that there may have been differences in the experience of inmates who adhere to different religions does not state a claim. *Maddox*, 655 F.3d at 718–19.

Likewise, the complaint and attachments reflect that Mr. Richmond was removed from the Prayer and Share services not for any reason related to his religious beliefs, but because he missed meetings and the program had a limited number of participants. To the extent his allegations might trigger a RLUIPA claim, he cannot obtain damages under that statute, and he does not ask to be reinstated to the Prayer and Share program even though he seeks various forms of injunctive relief in his complaint. His desire to change the facilitator program or to develop practices aimed at increasing "transparency" within the Chaplain's office goes beyond the scope of the relief available to him under RLUIPA, which is intended to remove barriers to *his* practice of religion. *See* 42 U.S.C. § 2000cc-1.

Regarding the Thanksgiving in a Box program, as far as the complaint reveals he was permitted to participate in this event as long as he selected General Christian as his religious preference, which he did. It appears he wanted to be an organizer of the event, but even assuming he was denied this opportunity, there is insufficient factual content from which the court could plausibly infer that not being able to organize this charity event substantially burdened his religious practice, rather than simply frustrating his subjective desires. *See Holt*, 574 U.S. at 352. Based on what he has alleged, he has not stated a plausible claim under the First Amendment or RLUIPA.

Therefore, the complaint does not state a claim upon which relief can be granted. In the interest of justice, the court will allow him an opportunity to amend his complaint if, after reviewing this order, he believes he can state a plausible constitutional claim based on these events, consistent with the allegations he has already made under penalty

of perjury. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018); *Luevano v. Wal-Mart*, 722 F.3d 1014, 1024 (7th Cir. 2013).

For these reasons, the court:

(1) GRANTS the plaintiff until **October 27, 2023**, to file an amended complaint if he so chooses; and

(2) CAUTIONS him that if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim upon which relief can be granted.

SO ORDERED.

October 2, 2023
*s/ Damon R. Leichty*
Judge, United States District Court